## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| RICKEY CARTHON | CIVIL ACTION NO. 08-1238 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CADDO PARISH SHERIFF STEVE PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court are two motions for summary judgment [Record Documents 9, 34], filed on behalf of Defendants, Calvary Baptist Church of Shreveport, Louisiana ("Calvary"), Caddo Parish Sheriff Steve Prator, Cpl. Victor Bordelon, Deputy Robert Montoya, Deputy Wade Jacobs, and Deputy Adam Jacobo. Defendants request the Court grant summary judgment in their favor on the following grounds: (1) probable cause existed for each of the four offenses for which Plaintiff was arrested, thus the officers are entitled to qualified immunity; (2) Plaintiff suffered only a "de minimis" injury; and (3) there is no evidence to support a Monell claim. [Doc. 34]. In addition, Calvary contends it is entitled to summary judgment because it did not exercise sufficient control over the activities of the officers to warrant a finding of vicarious liability. [Doc. 9]. Plaintiff opposes these motions. For the reasons stated herein, Defendants' motions for summary judgment are **GRANTED.**

### FACTUAL BACKGROUND

On November 2, 2007, Plaintiff Ricky Carthon ("Carthon") attended a high school football game between Calvary and Evangel High School at Calvary's stadium. Because these teams were fierce rivals and undefeated, a large number of spectators were

expected to be present. In preparation, Calvary made arrangements with the Caddo Parish Sheriff's Office for off-duty deputies to serve as security detail.

During the game, deputies moved up and down the stadium requesting spectators to find a seat and move from the aisles of the bleachers. When Carthon remained seated in the aisle of the bleachers, Deputy Montoya approached him and again requested he move from the aisle. After some discussion regarding the availability of seating in the stadium, Carthon moved from the aisle of the bleachers.

Later, Carthon approached Deputy Montoya in a public area of Calvary's stadium to ask for his name and badge number, and indicated that he was going to file a complaint against Deputy Montoya. At this time, Deputy Montoya was talking to other Caddo Parish Sheriff's deputies who were also in uniform. Deputy Montoya gave him the information and asked Carthon to move on. Other deputies also asked Carthon to go and enjoy the game. At some point, the deputies asked Carthon to leave the stadium, but he refused to do so. Carthon was then grabbed by Deputy Bordelon and Deputy Jacobs and told that he was under arrest. Carthon alleges he was thrown to the ground and beaten by the deputies. [Complaint, ¶¶ 21-22].

After his arrest, Carthon was charged with four offenses: (1) remaining after being forbidden, in violation of La. R.S. § 14:63.3; (2) resisting an officer, in violation of La. R.S. § 14:108; (3) public intimidation, in violation of La. R.S. § 14:122(1)(A); and (4) inciting to riot, in violation of La. R.S. § 14:329.2. The public intimidation charge was not prosecuted, but the District Attorney proceeded to trial on the remaining charges. The trial judge found Carthon not guilty at the conclusion of the State's case.

As a result of the felony and misdemeanor criminal charges, Carthon was suspended from his job at Willis-Knighton Medical Center. He was reinstated to his job after the District Attorney declined to prosecute the felony public intimidation charge, but he was placed on a different shift which resulted in lost income at Willis-Knighton, at a second job, and at a volunteer organization. [Complaint, ¶ 36].

On August 21, 2008, Carthon filed suit against the Caddo Parish Sheriff's Office, Caddo Parish Sheriff Steve Prator ("Sheriff Prator"), Deputy Robert Montoya, Corporal Victor Bordelon, Deputy Wade Jacobs, Deputy Adam Jacobo (collectively referred to as "Deputies") and Calvary Baptist Church of Shreveport, Louisiana ("Calvary"). Carthon alleges that he was arrested in violation of the Fourth and Fourteenth Amendments because the deputies lacked probable cause to arrest him for the charged offenses, that the deputies used excessive force when arresting him, and that the Caddo Parish Sheriff's Office established customs, policies, and practices that enabled the deputies to violate his constitutional rights. Carthon also contends Calvary is vicariously liable because it employed the deputies involved in the incident. Additionally, due to alleged racial overtones, Carthon asserts that his civil rights were violated and seeks to recover punitive damages and attorneys' fees.

## LAW AND ANALYSIS

I.  **Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

II.     **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Because qualified immunity is "an immunity from suit rather than a mere defense to liability,... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). Consequently,

qualified immunity questions should be resolved at the earliest possible stage in litigation. Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (per curiam).

In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis.[1] First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." Id. Second, if a violation has been established, the court must then determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. Id.; Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007). If officers of reasonable competence could disagree as to whether the plaintiff's right were violated, the officer's qualified immunity remains intact. Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005), citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986) (the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all by the plaintiff incompetent or those who knowingly violate the law."). The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court. Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003), citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994).

### 1. False Arrest Claims

To prevail on a constitutional claim of "false arrest," a plaintiff must show that he was arrested without probable cause. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001). The

---

[1] In Pearson v. Callahan, — U.S. —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), the Supreme Court held that while the sequence set forth in Saucier is often appropriate, it is no longer mandatory. Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009). Probable cause must be based on facts known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest. Club Retro, 568 F.3d at 204; Evett, 330 F.3d at 688. However, qualified immunity shields an officer from liability "even if he 'reasonably but mistakenly concludes that probable cause is present.'" Evett, 330 F.3d at 688, quoting Mangieri, 29 F.3d at 1016.

In this matter, to determine whether the deputies are entitled to qualified immunity, the Court must decide whether officers of reasonable competence could disagree as to whether probable cause existed as to any of the four charged offenses. See Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995) ("If there [is] probable cause for any of the charges made. . .then the *arrest* was supported by probable cause, and the claim for false arrest fails.") (italics in original).

Carthon was initially arrested for "entry on or remaining in places or on land after being forbidden," in violation of La. R.S. § 14:63.3. The statute provides, in pertinent part:

> A. No person shall without authority go into or upon or remain in or upon . . .any structure, water craft, or any other movable, or immovable property, which belongs to another . . . after having been forbidden to do so, either orally or in writing, . . . by any owner, lessee, or custodian of the property or by any other authorized person.

During the game, after Deputy Montoya requested Carthon move from the aisle of the bleachers, Carthon approached Deputy Montoya on two separate occasions. [Montoya Affidavit, ¶¶ 5, 7]. Each time, Carthon was asked "to move on" and encouraged to go and enjoy the game. Id. at ¶ 5. Eventually, Deputies Bordelon and Jacobs asked Carthon to leave the stadium. but it "became apparent that Mr. Carthon would not do so." Id. at ¶ 7. As Deputy Bordelon testified:

> A. . . . Mr. Montoya said: "Go find a place and enjoy the game." Mr. Carthon still would not leave . . .
>
> * * *
>
> A. [Deputy Jacobs and I] asked him to go enjoy the game.
>
> Q. Right.
>
> A. And he did not go enjoy the game.
>
> Q. And can you continue? What happened next?
>
> A. Okay. When he wouldn't leave from that area, then he was asked to leave the premises.
>
> * * *
>
> Q. Was he asked to leave the stadium?
>
> A. Yes.
>
> * * *
>
> Q. And whenever he was ordered to leave the premises, as you said, the stadium, what happened? What did he do?
>
> A. He would not leave. . . .

[Plaintiff's Ex. 1, p.61-62].

Similarly, Deputy Jacobs testified that Carthon ignored his requests to leave:

> A. I told him he — my exact words were — first, I said for him to move on. And then I told him that he needed to leave the premises because he refused. He completely ignored me.

> \* \* \*
>
> A.  I told him — I believe my exact words — I can't recall my exact words. But I believe I told him that he lost his chance to move on and that he needed to remove himself from the premises.
>
> Q.  Did you say to remove yourself from the premises in the next two minutes or you are going to jail?
>
> A.  I said now.
>
> Q.  Okay. You said you need to leave the premises now?
>
> A.  Now.
>
> Q.  And what did he do?
>
> A.  He completely ignored me.

Id. at pp.116-17.

It is undisputed that the deputies requested Carthon to leave the stadium. See Doc. 43, p.11. Carthon contends, however, that the deputies lacked probable cause to arrest him for the offense of "remaining after being forbidden" because they did not afford him a reasonable amount of time to comply with their requests, that only "seconds" passed between the time Deputy Jacobs asked Carthon to leave and when he was arrested. Id. at pp.12-13. Carthon cites to State v. Kology, 785 So.2d 1045, 1048 (La.App. 3 Cir. 2001), wherein the court held that "a defendant must be accorded a reasonable time to accomplish his departure." Whether the defendant has been accorded a "reasonable time" depends on the particular facts of each case. See Id. at 1049; Mesa v. Prejean, 543 F.3d 264, 270 (5th Cir. 2008).

In the instant matter, Carthon may have been arrested only seconds after Deputy Jacobs asked him to leave the stadium, but he had also been asked to leave by Deputy

Montoya and Deputy Bordelon prior to that time. Carthon ignored each request and continued to stare at Deputy Montoya, conduct which suggested he was refusing to comply with their requests. Noting this testimony is not refuted by Carthon, the Court agrees with Defendants that Carthon was accorded a "reasonable time" to leave the stadium and that his refusal to do so gave the deputies probable cause to arrest him for remaining after being forbidden.[2] Accordingly, the deputies are entitled to qualified immunity on Carthon's false arrest claims.

### 2. Excessive Use of Force Claims

In order to state a claim for the constitutional violation of excessive use of force against an arrestee, Carthon must establish "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996), citing Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993). In gauging the objective reasonableness of the force used by a law enforcement officer, the Court must balance the amount of force used against the need for that force. Id. at 434.

Defendants contend Carthon's claim of excessive use of force fails because he experienced no more than a "de minimis injury." See Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000-01, 117 L.Ed.2d 156 (1992) (wherein the Supreme Court recognized that "de minumus uses of physical forces" are insufficient to establish a

---

[2]Because the Court finds probable cause existed to arrest Carthon for remaining after being forbidden, the offense for which Carthon was initially arrested, it is unnecessary to determine whether probable cause also existed for the remaining charged offenses. See Wells, 45 F.3d at 95 (a claim for false arrest does not cast its focus on the validity of each individual charge; instead, the focus is on the validity of the *arrest*) (emphasis added).

constitutional violation). The amount of injury required to prevail on an excessive force claim depends on the context in which the injury occurs. Ikerd, 101 F.3d at 434. The Fifth Circuit requires a plaintiff to have "suffered at least some injury." Id., quoting Jackson v. R.E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993). However, the Supreme Court has stated that "the extent of injury suffered by a [plaintiff] is one factor that may suggest whether the use of force" was excessive "in a particular situation." Hudson, 503 U.S. at 7, 112 S.Ct. at 999. Thus, the amount of injury necessary to satisfy the Fifth Circuit's requirement of "some injury" is directly related to the amount of force that is constitutionally permissible under the circumstances.

In this case, Carthon admits that he suffered no physical injuries other than a "scrape" on his forehead:

> Q. Now, you didn't suffer any physical injury in this incident?
>
> A. I got a cut on my eye, a little scrape. It wasn't much of nothing.
>
> Q. Describe it for me.
>
> A. My right eye. Just a little scrape from hitting the ground.
>
> Q. So a scrape?
>
> A. Yes.
>
> Q. What size was the scrape?
>
> A. Probably half an inch long.
>
> Q. Did it bleed?
>
> A. It just kind of barely broke the skin so it wasn't an active bleed, a flowing bleed.

> Q. Okay. Did you have any other mark on your body?
>
> A. No.

[Carthon's Dep., Ex. A, p.169]. In fact, Carthon indicated to Shreveport Fire Department personnel on the scene that he was not injured and declined any medical treatment. [Montoya Affidavit, ¶ 12; Saldana Dep., p.20].

Nonetheless, Carthon maintains the use of force "was excessive because it was not objectively reasonable, i.e., it served 'no apparent law enforcement related purpose.'" [Doc. 43, p.21]. Carthon cites to Williams v. Bramer, 180 F.3d 699 (5th Cir. 1999), where the Fifth Circuit held that "although suffering from dizziness, loss of breath, and coughing are not significant injuries, combined, they qualify as a cognizable injury when the victim is maliciously assaulted by a police officer." Id. at 704. In this case, however, there is no evidence to even suggest that Carthon was "maliciously assaulted" by the deputies. To the contrary, the undisputed evidence shows that after Deputy Montoya asked Carthon to move from the aisle of the bleacher, Deputy Montoya walked away from Carthon. When Carthon sought out Deputy Montoya on two separate occasions to discuss the seating arrangements in the stadium and to request Deputy Montoya's name and badge number, Deputy Montoya simply told Carthon to "move on" and encouraged him to go and enjoy the game.

When Carthon failed to comply with Deputy Montoya's requests to "move on," the deputies believed the situation had the potential to escalate. Carthon had approached Deputy Montoya on multiple occasions, stared at him, and told other individuals that

Deputy Montoya was giving him a hard time and/or harassing him.[3] [Plaintiff's Ex. 1, pp. 62-64; Plaintiff's Dep., p. 146; Montoya Affidavit, ¶¶ 5-7; Jacobs Affidavit, ¶ 2]. Consequently, Deputies Montoya, Bordelon and Jacobs requested that he leave the stadium. As discussed above, Carthon ignored the deputies requests and it became apparent that he would not leave voluntarily. See, supra. At that point, Deputy Bordelon and Deputy Jacob grabbed Carthon's arms and began escorting him out of the stadium. Deputy Bordelon and Deputy Jacob attempted to remove his hands from his pockets so that he could be handcuffed, but they were unable to do so. [Montoya Affidavit, ¶ 8; Jacobs Affidavit, ¶ 2; Plaintiff's Ex. 1, p.66]. At that point, the deputies pushed him onto the ground so they could secure his arms and place him in handcuffs. At Carthon's trial, Deputy Bordelon testified that the decision to "take the defendant to the ground" was made:

> Due to the fact that his hands were in his pockets, and he started to resist us trying to get his hands out of his pockets, and he wouldn't do it himself, led me to believe that there might be a danger of something was actually in the pocket and that he was trying to conceal from us that could do us great bodily harm. And to that fact, when he started resisting, it was safer to go ahead and get him on the ground and secure him to the ground.

[Plaintiff's Ex. 1, p.70]. Deputy Jacobs testified that they did not "take him to the ground" until after "telling him to place his hands behind his back several times and trying to pull his arms out of his jacket pockets." Id. at p.123. Even if the Court accepts Carthon's

---

[3]Carthon's allegations indicate that he believes the deputies harbored a racial bias towards him and the other individuals, but he has offered no evidence of any such bias. Instead, Deputy Bordelon's testimony shows that he knew one of those individuals and "reached out and shook [his] hand." [Plaintiff's Ex. 1, p.62].

testimony that the deputies' effort to handcuff him prevented him from removing his hands from his pockets, any officer could have reasonably believed that Carthon was "resisting."

Unlike Williams, there is no evidence demonstrating that Carthon was "maliciously assaulted" by the deputies. Rather, at the time the deputies pushed Carthon to the ground and forcibly removed his hands from his jacket pocket, the deputies not only had probable cause to arrest him for remaining after being forbidden, they also has probable cause to believe he was resisting arrest. Under these circumstances, the Court believes the amount of force used by the deputies was "objectively reasonable," and that Carthon's "scrape" on the forehead is a "de minimus injury" insufficient to establish a constitutional violation. Accordingly, Carthon's claim of excessive force fails as a matter of law.

### III.     Monell Claims Against the Caddo Parish Sheriff's Office

Carthon named Caddo Parish Sheriff's Office as a defendant asserting governmental liability under 42 U.S.C. § 1983. Specifically, Carthon alleges Sheriff "Prator and the Caddo Parish Sheriff's Office established customs, policies, and practices which directly and proximately caused the deprivation of the civil, constitutional, and statutory rights of Carthon." [Complaint, ¶ 46]. These policies, customs and practices include "inadequate, unreasonable, and improper policies and procedures" related to (a) "the use of force," (b) "basing an arrest and criminal charges on a citizen's race" and/or (c) "hiring, training, supervising, and disciplining of officers related to the use of force and/or related to basing an arrest and criminal charges on a citizen's race." Id. at ¶ 47.

It is well-established that a local government agency cannot be held liable for the isolated unconstitutional actions of its employees or agents. See Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611

(1978); see also, Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  Instead, a local government agency can be held liable under § 1983 only if the plaintiff establishes (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  McGregory v. City of Jackson, – F.3d –, 2009 WL 1833958, *2 (5th Cir. 2009), citing Rivera v. Houston Index. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003).  "[A] municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration."  Richardson v. Oldham, 12 F.3d 1373, 1381-82 (5th Cir. 1994).  Furthermore, the plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Board of County Com'rs of Bryan Co. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

Carthon's Monell claim against the Caddo Parish Sheriff's Office fails on multiple grounds.  First, Carthon has not identified an underlying violation of his constitutional rights.  As set forth previously in the Court's qualified immunity analysis, Carthon failed to demonstrate that the deputies violated his clearly established Fourth Amendment right to be arrested only upon "probable cause" and to be free from the use of excessive force.  Thus, there is an absence of an underlying constitutional violation.

Moreover, Carthon alleges municipal liability based on the Caddo Parish Sheriff's Office failure to adequately "instruct, supervise, control, and discipline Caddo Parish Sheriff's deputies," including the deputies involved in this incident. [Complaint, ¶ 48].  His claim is based on the approval of Deputy Montoya's arrest report by a Caddo Parish Sheriff sergeant and internal affairs bureau. [Doc. 43, p.22].  But Carthon has failed to identify any "policy or custom" that was the "moving force" behind the deputies actions or demonstrated

that his "injury" was incurred as a result of such policy or custom. Accordingly, Carthon's Section 1983 claim against the Caddo Parish Sheriff's Office fails as a matter of law.

IV.     **Vicarious Liability Claim against Calvary**

Carthon has named Calvary as a defendant under a theory of *respondeat superior*, alleging that the deputies were "acting in the course and scope of their employment with [Calvary]" at the time of the incident. [Complaint, ¶ 56]. As a general rule under Louisiana law, a principal cannot be held liable for the tortious actions committed by an "independent contractor" performing his contractual duties. Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 380 (5th Cir. 2001). However, a principal may be liable if it maintains operational control over the activities being performed by the independent contractor. Id.

The parties disagree as to whether Calvary maintained control over the deputies security duties at the stadium, but the Court finds this factual issue to be irrelevant for purposes of this motion. As the Court previously set forth, Carthon failed to demonstrate that the deputies violated his rights to be arrested only upon "probable cause" and to be free from the use of excessive force, a necessary prerequisite to the liability of Calvary. See e.g., Anderson v. City of Minden, 2009 WL 1374122, *8 (W.D.La. May 15, 2009); Cameron Parish Sch. Bd. v. State Farm Fire & Cas. Co., 560 F.Supp.2d 485, 490 (W.D.La. 2008); Chagnard v. Cambre, 2007 WL 2229296, *3 (E.D.La. Aug. 1, 2007). Accordingly, summary judgment on Carthon's claim against Calvary is proper as a matter of law.

V.      **State Law Claims**

Carthon also asserts state law tort claims arising from his allegations he was arrested without probable cause and that the deputies used excessive force during the

arrest. [Complaint, ¶ 55]. Under Louisiana law, the same standards are used in analyzing state law claims of false arrest and excessive force as constitutional claims, namely, whether the deputies actions were "reasonable" under the circumstances. See Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997); Reneau v. City of New Orleans, 2004 WL 1497711, *3-4 (E.D.La. July 2, 2004); Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977). The Court has granted the deputies' qualified immunity finding that probable cause existed to arrest Carthon, that his injuries were de minimis, and that the deputies' use of force was reasonable and not excessive to the need. As the Court has found that the deputies acted reasonably under the circumstances, Carthon's state law claims for false arrest and excessive force must fail. See id.

Moreover, to the extent Carthon alleges a state law claim of malicious prosecution against the deputies, a claim which has elements different from the false arrest claims, the Court finds this claim to be meritless. To prevail on a claim for malicious prosecution under Louisiana law, the plaintiff must prove: (1) the commencement or continuance of an original criminal or civil law judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards to the plaintiff. Jones v. Soileau, 448 So.2d 1268, 1271 (La. 1984). As the Court previously set forth in its discussion regarding Carthon's excessive force claim, the record is completely devoid of any evidence demonstrating that the deputies acted with "malice." See, supra. Accordingly, Carthon's state law claim for malicious prosecution must also fail.

**CONCLUSION**

After careful consideration of the briefs and exhibits filed, the Court finds that there are no genuine issues of material fact regarding the actions of the Caddo Parish Sheriff's deputies involved in the incident on November 2, 2007. Accordingly, finding the deputies' actions were objectively reasonable under the circumstances, Defendants' motions for summary judgment shall be **GRANTED** and Carthon's claims must be **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 14th day of October, 2009.

                                                               /s/ S. Maurice Hicks, Jr.
                                                               S. MAURICE HICKS, JR.
                                                               UNITED STATES DISTRICT JUDGE